**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RICHARD USHER,<br><br>       Plaintiff,<br><br>   v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE, THE UNITED STATES ATTORNEY GENERAL, *and* THE ASSISTANT ATTORNEY GENERAL FOR THE ANTITRUST DIVISION OF THE UNITED STATES DEPARTMENT OF JUSTICE,<br><br>       Defendant. | Civil Action<br>No. 1:21-cv-654 |

**PLAINTIFF RICHARD USHER'S RESPONSE TO**
**DEFENDANT DOJ'S SUGGESTION OF MOOTNESS**

## INTRODUCTION

The Government advances the constitutionally untenable position that it can bring a prosecution that it loses and still destroy the exculpatory evidence, while other related matters may be pending.

After losing its highly publicized but baseless criminal prosecution against Usher in an October 2018 jury trial, the Department of Justice ("DOJ") Antitrust Division engaged in unparalleled gamesmanship in the government's unwarranted second bite at the apple in the Office of the Comptroller of the Currency ("OCC") proceeding. The Antitrust Division repeatedly denied Mr. Usher access to the very evidence the Antitrust Division had identified and produced as exculpatory evidence in the criminal proceeding. Mr. Usher needed that exculpatory evidence to defend himself in an administrative enforcement proceeding brought by the OCC based on the same cartel chatroom, and he now needs that same evidence to vindicate his rights against the OCC in his action under the Federal Tort Claims Act ("FTCA") and possibly in other fora.

Nonetheless, DOJ here argues that it should benefit from its cynical withholding of evidence, that the exculpatory evidence be destroyed, and that this Court should declare the matter moot because the OCC unilaterally capitulated and dismissed all charges against Mr. Usher with prejudice. The dispute is very much alive, and this is not a "no harm no foul" situation. This Court should not reward DOJ's obstruction.

Mr. Usher's odyssey to obtain practical access to the government's exculpatory evidence about him began in the summer of 2020, when Mr. Usher first fought for access to the discovery record in the government's parallel criminal action in the U.S. District Court for the Southern District of New York, by seeking modification of the protective order in that action. In a foreshadowing of the baselessness of the government's cases, the Antitrust Division had produced reams of exculpatory evidence under its *Brady*, *Giglio*, and Rule 16 obligations in the criminal

1

case. In October 2018, that exculpatory evidence was crucial to establishing Mr. Usher's innocence, showing, for instance, that banks routinely bought and sold foreign exchange in the inter-dealer market ("vertical" conduct that is legitimate in the parlance of antitrust laws), and that to do so required disclosure of the position (long or short) in order to propose a buy-sell transaction. Just as a home seller must announce her intention to sell the house in order to obtain buy offers, so too in foreign exchange. The Antitrust Division mischaracterized the conduct as a horizontal conspiracy, ignoring the market-clearing aspects of the banks' role in the interbank foreign exchange marketplace. The government's sole percipient witness admitted the key role of these buy-sell transactions. The jury acquitted Mr. Usher in hours. The jury understood what the Antitrust Division was blind to.

After Mr. Usher prevailed over the Antitrust Division in the Southern District of New York, and understandably sought the same exculpatory evidence for the OCC action premised on the same alleged cartel chatroom, DOJ vigorously opposed that request. The government even went so far in late 2020 as to deny Mr. Usher use of the public trial exhibits[1]—a baseless position rejected by U.S. District Judge Richard Berman.[2] DOJ assured Judge Berman that Mr. Usher would suffer no prejudice if his request to modify the protective order were denied because there were other avenues for Mr. Usher to obtain the discovery he needed, namely, through third-party subpoenas and the DOJ's *Touhy* regulations.[3] Shortly thereafter, Judge Berman denied Mr. Usher's codefendant's request to modify the protective order, so Mr. Usher did exactly as DOJ suggested: Mr. Usher applied to Administrative Law Judge ("ALJ") Whang for a third-party

---

[1] Letter from DOJ to Judge Berman at 1-3, *United States v. Usher, et al.*, No. 17-cr-00019 (S.D.N.Y. Dec. 30, 2020), ECF No. 258.
[2] Decision & Order at 2, *United States v. Usher, et al.*, No. 17-cr-00019 (S.D.N.Y. Jan. 6, 2021), ECF No. 260.
[3] Letter from DOJ to Judge Berman at 5-6, *United States v. Usher, et al.*, No. 17-cr-00019 (S.D.N.Y. Aug. 21, 2020), ECF No. 245.

subpoena to be issued to DOJ, and he submitted to DOJ a request for documents pursuant to DOJ's *Touhy* regulations. ALJ Whang granted Mr. Usher's requested subpoena against the DOJ. DOJ never appeared before ALJ Whang. Instead, DOJ summarily denied both requests, thumbing its nose and forcing Mr. Usher to file the instant lawsuit to obtain once again the ability to use the exculpatory evidence.

Ultimately, the OCC's case was so weak that the OCC abandoned the case suddenly and unilaterally in July 2021. The case was so weak in fact that the OCC chose not to even defend and brief against the upcoming defense summary judgment motions.

The case is not moot while relief can be granted—here, production of the long-sought exculpatory documents. A case becomes moot "only if 'intervening events make it impossible to grant the prevailing party effective relief.'" *Cleveland Cnty. Ass'n for the Gov't by the People v. Cleveland Cnty. Bd. of Comm'rs*, 142 F.3d 468, 475 (D.C. Cir. 1998) (quoting *Burlington N. R.R. Co. v. Surface Transp. Bd.*, 75 F.3d 685, 688 (D.C. Cir. 1996)). "A case becomes moot only when it is impossible for a court to grant 'any effectual relief whatever' to the prevailing party." *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1660 (2019) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013); *see also Knox v. Serv. Employees Int'l Union Local 100*, 567 U.S. 298, 307 (2012) (same).

Indeed, "courts often adjudicate disputes whose 'practical impact' is unsure at best, as when 'a defendant is insolvent.'" *Tempnology*, 139 S. Ct. at 1661. *See also United States v. Morton Salt Co.*, 338 U.S. 632, 642 (1950) ("Because judicial power is reluctant if not unable to summon evidence until it is shown to be relevant to issues in litigation, it does not follow that an administrative agency charged with seeing that the laws are enforced may not have and exercise powers of original inquiry.").

3

Even if this Court were to conclude that the dismissal of the OCC action otherwise would ordinarily moot this action, it should not conclude that it does here under the doctrine of "capable of repetition yet evading review." That doctrine is literally true here. Having refused to obey a lawfully served subpoena, and having refused to produce a single document under its *Touhy* procedures, DOJ blithely suggests in its Suggestion of Mootness more than a year after Mr. Usher's DOJ document odyssey began that "[i]f Plaintiff wishes to use the [DOJ] documents in a new proceeding, ***he may of course submit a new request to the Department***." Suggestion of Mootness at 11 (emphasis added). In other words, DOJ is inviting that this litigation repeat itself, with nothing in place to deter DOJ from ignoring Mr. Usher's continued requests. The ping ponging and shell game of exculpatory documents should stop here. This Court should reject DOJ's invitation to repeat this action in the future and deny DOJ's suggestion of mootness.

DOJ relies erroneously on private civil cases involving subpoenas issued pursuant to Rule 45—which by its terms requires an "action" to be pending in federal court. But this is a case about an administrative subpoena issued by an ALJ after a parallel trial victory in a criminal case, and the subpoena here is not a Rule 45 subpoena. Rather, OFIA's, and by extension, ALJ Whang's authority to issue subpoenas is statutory, and is not dependent upon an underlying pending adversarial proceeding.

DOJ's actions in refusing production of the same exculpatory materials that it produced to Mr. Usher in the criminal case have violated his due process rights and breed disrespect for the law.

## BACKGROUND

This action centers on Mr. Usher's efforts to obtain civil discovery of the same exculpatory documents that DOJ produced to Mr. Usher in criminal discovery over three years ago. On August 14, 2020, Mr. Usher sought permission from U.S. District Judge Richard M. Berman, who had

4

presided over the criminal trial, to move for a modification of the Court's protective order in that action so that Mr. Usher could use the discovery file to mount a defense in the OCC's enforcement action against him, which was "based on the same underlying facts as those at issue in the criminal case." Usher Letter to Judge Berman, Am. Compl. Ex. 8 at 1, ECF No. 8-8. On August 21, 2020, DOJ announced its opposition to Mr. Usher's request to amend the protective order, and suggested that Mr. Usher instead subpoena the relevant materials or avail himself of the DOJ's *Touhy* process. DOJ Letter to Judge Berman, Am. Compl. Ex. 12 at 5, ECF No. 8-12. At a conference on November 4, 2020, Judge Berman granted Mr. Usher permission to access temporarily the previously produced DOJ discovery to identify specific records he wished to use in his defense before the OCC (Am. Compl. Ex. 9 at 27, ECF No. 8-9), but has not yet ruled on Mr. Usher's application for modification of the Protective Order due to the proceedings in this action (*see* Usher Letter to Judge Berman Requesting Extension, *United States v. Usher et al.*, No. 17-cr-19 (S.D.N.Y. Sept. 1, 2021), ECF No. 270).[4]

In the meantime, Mr. Usher followed DOJ's instructions to obtain the requested materials by first filing a *Touhy* request with DOJ on January 14, 2021 pursuant to the Department's *Touhy* regulations at 28 C.F.R. §§ 16 et seq. Usher Touhy Request, Am. Compl. Ex. 14, ECF No. 8-14. But despite DOJ's assertion that the *Touhy* process is "an [a]lternative and [m]ore [a]ppropriate means of discovery" for the OCC action (Am. Compl. Ex. 12 at 5), DOJ denied Mr. Usher's *Touhy* request in full on February 9, 2021 (DOJ Touhy Response, Am. Compl. Ex. 15 at 1-2, ECF No. 8-15).

---

[4] Usher recently submitted a joint letter to Judge Berman requesting that the DOJ preserve and retain the criminal discovery file. The DOJ's submission in that letter asks for the matter to be decided by this Court. Joint Letter to Judge Berman at 1-3, *United States v. Usher, et al.*, No. 17-cr-00019 (S.D.N.Y. Sept. 17, 2021), ECF No. 272 (DOJ position: "Mr. Usher addresses this motion to the wrong forum [SDNY]. . . . The Department's responsibilities with respect to the *Touhy* matter . . . are Judge Contreras's concern.").

5

Obstructed again, Mr. Usher applied to ALJ Whang on March 25, 2021 for a subpoena for a subset of the DOJ documents in the OCC proceeding (after several rounds of further narrowing as a result of the OCC's objections to the subpoena). On April 15, 2021, ALJ Whang issued the administrative subpoena that Mr. Usher requested. Mot. Summ. J. Ex. 35, ECF No. 20-38. ALJ Whang's subpoena requires DOJ to produce 388 specifically enumerated documents from the criminal discovery file. *Id.* at 7-14. But DOJ refused to even respond to the subpoena, instead disputing ALJ Whang's authority to issue it in a May 19, 2021 letter to Mr. Usher. *See* Final Letter from DOJ to Usher's Counsel, Mot. Summ. J. Ex. 36, ECF No. 20-39.

DOJ never intervened or appeared before Judge Whang. DOJ never asserted any legal defense to the subpoena before Judge Whang.

Following DOJ's assertions that DOJ would not comply with ALJ Whang's subpoena or even meaningfully respond to Mr. Usher's *Touhy* request, Mr. Usher initiated the current litigation to require DOJ to comply with his *Touhy* request and to enforce ALJ Whang's subpoena. *See* Compl. (Mar. 11, 2021), ECF No. 1; Am. Compl. (Mar. 15, 2021), ECF No. 8.

On July 7, 2021, in the middle of the briefing for this action—and after the close of fact discovery and near the end of expert discovery in the OCC proceeding—Enforcement Counsel for the OCC informed counsel for Mr. Usher without warning that the OCC would unilaterally and voluntarily move to dismiss its action against Mr. Usher with prejudice. *See* Notice of Withdrawal, Suggestion of Mootness Ex. 3 at 1, ECF No. 25-4. Mr. Usher informed ALJ Whang that he had post-dismissal motions. The next day, on July 8, 2021, ALJ Whang "administratively closed" the matter. Notice and Order Administratively Closing Case, Suggestion of Mootness Ex. 4 at 1, ECF No. 25-5. Asserting that the OCC's Uniform Rules of Practice and Procedure do not "provid[e] for the resolution of post-dismissal motions" before the ALJ, ALJ Whang also "direct[ed] that any

6

such motions" relating to the OCC action "be filed with the Comptroller of the Currency ('Comptroller') directly, so that they may be remanded as appropriate at the Comptroller's discretion." *Id.* Mr. Usher is pursuing his post-dismissal action against the OCC, which will include claims under the Federal Torts Claims Act.

## ARGUMENT

### I.  Neither the Subpoena Nor Usher's *Touhy* Request is Void—This Court Has the Power to Order "Effectual Relief"—the Production of Documents

DOJ now argues that the OCC's dismissal of its action against Mr. Usher automatically voids the ALJ's subpoena and renders Mr. Usher's *Touhy* request moot, but relies on cases addressing Rule 45 subpoenas. DOJ's cases do not address the fact that neither the *Touhy* request nor the ALJ's subpoena is authorized pursuant to Rule 45.

ALJ Whang issued the subpoena to the DOJ Antitrust Division pursuant to 12 U.S.C. § 1818(n), which empowers Office of Financial Institution Adjudication ("OFIA") ALJs to issue subpoenas "in connection with" any examination or investigation. OFIA administrative law judges are not limited in their subpoena authority by the confines of Rule 45, so ALJ Whang's subpoena here remains valid. *See Morton Salt*, 338 U.S. at 642-43; *see also Okla. Press Pub. Co. v. Walling*, 327 U.S. 186, 214 (1946) ("Congress has authorized [the agency], rather than the district courts in the first instance . . . to exercise [its] subpoena power for securing evidence . . . ."). The same logic applies to Mr. Usher's *Touhy* request: His request was not a Rule 45 subpoena. Rather, Mr. Usher submitted a "summary of the information sought and its relevance to the proceeding" to DOJ, as DOJ requested and as its regulations provide. 28 C.F.R. § 16.22(d); *see id.* §§ 16.21 et seq.

A case or controversy exists here. Mr. Usher's *Touhy* request and ALJ Whang's subpoena both remain valid, and DOJ has flouted its own regulations and the ALJ's authority by refusing to

7

produce a single document in response to those requests. Thus, this Court would not be issuing an advisory opinion by deciding this case; rather, it could order the precise relief Mr. Usher seeks: production of the documents he requests.

The cases that DOJ cites here are inapposite. Each concerns enforcement of subpoenas issued under Rule 45 of the Federal Rules of Civil Procedure (or its state court equivalent, in the case of *Lopez*). Rule 45, by its terms, is expressly tethered to a specific "action" pending in federal district court. *See, e.g.,* Fed. R. Civ. Proc. 45(a)(1)(A)(ii) ("Every subpoena must . . . (ii) state the title of the action and its civil-action number . . . ."); Fed. R. Civ. Proc. 45(a)(2) ("A subpoena must issue from the court where the action is pending."). In fact, in *In re City of El Paso*, the D.C. Circuit specifically tied its ruling to the textual limitations of Rule 45 subpoenas (as opposed to Rule 27 subpoenas). *See In re City of El Paso*, 887 F.2d 1103, 1105 (D.C. Cir. 1989). In particular, the D.C. Circuit highlighted the ease with which parties may issue Rule 45 subpoenas pending trial: they are "more or less automatic." *Id.* In contrast, Rule 27 subpoenas, like the subpoena requested here, may only be issued upon motion and a showing of relevance and need. *Id.*

DOJ also relies heavily on *Apollo Group* (Suggestion of Mootness at 1, 6, 7, 9, 10), an unpublished DC Circuit decision, but *Apollo Group* also expressly relies upon Federal Rule of Civil Procedure 45(a)(1)(A)(ii)'s reliance on a pending "action"—noting that that Rule 45's paragraph (a)(1)(A)(ii) "requir[es] that a subpoena state the civil action number and *the court in which it is pending*." *Apollo Grp., Inc. v. United States Dep't of Educ. (In re Apollo Grp., Inc.)*, 329 F. App'x 283, 284 (D.C. Cir. 2009) (emphasis added).

The other cases the DOJ relies upon in its Suggestion of Mootness (at 7-8) are similarly Rule 45 cases or otherwise outside of administrative litigation. For example, *Convertino v. United States*, 684 F.3d 93 (D.C. Cir. 2012), is a Rule 45 decision, and involved a Privacy Act lawsuit

8

brought by an AUSA against the United States in this District, with out-of-district discovery in the Eastern District of Michigan. *Id.* at 97 (suit in D.D.C., subpoena duces tecum in the Eastern District of Michigan); *see also id.* at 101-02 (reversing district court grant of summary judgment to the government and denial of Convertino's Rule 56(f) motion and extending the litigation to permit out-of-district discovery to proceed). *Convertino* is the only case the DOJ cites involving the United States as a defendant, and the D.C. Circuit's concerns that the plaintiff there be given the full opportunity for collateral discovery to play out before granting the government's summary judgment motion is instructive here. *Id.* at 101 ("[W]e believe that Convertino submitted ample evidence to suggest that additional discovery could reveal the source's identity.").

*Lopez Contractors. Inc. v. F&M Bank Allegiance*, 90 F. App'x 549 (D.C. Cir. 2004), is an unpublished decision involving a subpoena obtained from a state court in support of litigation in another a state court, in which, after removal, the D.C. Circuit considered the state court subpoena under the Federal Rules. *Id.* at 549-50 (discussing Fed. R. Civ. P. 27(b)). *Harter v. Iowa Grain Co.* is another unpublished decision; it involves arbitrator immunity to subpoenas, involving Rule 45 out-of-district enforcement in the D.D.C. for a case then pending in the U.S. District Court in Illinois. *Harter v. Iowa Grain Co.,* No. 98-mc-00014, 1998 U.S. Dist. LEXIS 22855, at *1 (May 12, 1988), *aff'd*, No. 98-7108, 1998 U.S. App. LEXIS 28491 (D.C. Cir. 1998).

Because ALJ Whang's subpoena to DOJ was issued under 12 U.S.C. § 1818(n), rather than Rule 45 of the Federal Rules of Civil Procedure, the cases that DOJ cites are simply inapplicable. The authority that Congress granted under 12 U.S.C. § 1818(n) to issue third-party subpoenas is not limited to pending enforcement proceedings, and so ALJ Whang's subpoena is not *automatically* voided by the OCC withdrawing its charges with prejudice.

II. **DOJ's Refusal to Produce under its *Touhy* Regulations is Capable of Repetition, DOJ Has In Fact Invited Usher to "Submit a New Request to the Department," and Will Evade Review, and so the Case Is Not Moot**

DOJ blithely suggests that Usher simply "submit a new request" for the exact same documents he seeks now in his FTCA action against the OCC, inviting repetition of the same wrongs that Usher is asking this court to rectify now. Suggestion of Mootness at 11. Indeed, DOJ's Suggestion of Mootness *invites* this litigation to repeat itself: "If Plaintiff wishes to use the documents in a new proceeding, ***he may of course submit a new request to the Department***." Suggestion of Mootness at 11 (emphasis added).

"[J]urisdiction is not necessarily defeated simply because the order attacked has expired, if the underlying dispute between the parties is one capable of repetition, yet evading review." *Recording Indus. of Am. v. Verizon Internet Servs. (In re Verizon Internet Servs.)*, 257 F. Supp. 2d 244, 272 (D.D.C. 2003) (quoting *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 546 (1976)). Given DOJ's track record in this case, and its unresponsiveness to Mr. Usher's requests using the *Touhy* process or a validly served subpoena, this case presents the quintessential case of capable of repetition yet evading review.

The D.C. Circuit and other courts "have long recognized that there 'may very well be circumstances in which proposed delay in making information available or unacceptably onerous opportunities for viewing disclosed information require judicial intervention.'" *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988) (quoting *Lybarger v. Cardwell*, 577 F.2d 764, 767 (1st Cir. 1978)). One such circumstance, as the D.C. Circuit in *Payne* noted, is where an "agency *policy or practice* will impair the party's lawful access to information in the future," "even though a party may have obtained relief as to a *specific request*" under FOIA, for example. *Id.* (citing *Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 91 (D.C. Cir. 1986)); *see also Better Gov't Ass'n*, 780 F.2d at 91-92 (holding the dispute not moot where "appellants are frequent FOIA

10

requesters; and neither [agency has] disavowed reliance on the [agency] guidelines or [] regulation" the application of which constitutes the "allegedly impermissible practice"). *See also Envtl. Defense Fund, Inc. v. Gorsuch*, 713 F.2d 802, 810-11 (D.C. Cir. 1983) (holding the dispute not moot where EPA deferred or suspended a permit process for only a year, appellant was "likely to be a party to any future dispute which involves a similar principle," and EPA's "history of deferrals and suspensions" under the same regulations, coupled with its "conspicuous failure . . . to foreswear future deferrals without notice or comment, sufficiently show such conduct may reasonably be expected to occur again").

In *Payne*, the D.C. Circuit Court found Payne's challenge to the Air Force's policy or practice regarding FOIA responses was not moot because Payne showed that the Air Force "follow[ed] an 'impermissible practice' in evaluating FOIA requests," rather than making "merely isolated mistakes by agency officials"; that Payne "will suffer 'continuing injury due to this practice'";  and that "the Air Force's promise to desist from following the challenged practice" in the future was insufficient to moot the action. *Payne*, 837 F.2d at 491-92.  The *Payne* Court determined that the Government's "modest assurance" in an "affidavit by an Air Force Major[] that the contested practice will not be reinstated" could not satisfy the Air Force's "*heavy burden* of demonstrating 'that there is no reasonable expectation . . . that the alleged violation will recur.'" *Id.* at 491-92 (quoting *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).

The Government's affidavit in *Payne* was insufficiently "weak assurance" where top Air Force officials had not "signed affidavits pledging future compliance" and given "*the history of stubborn refusals by [agency] officers to release information to Payne*—even in the face of instructions from the Secretary of the Air Force." *Id.* at 492 (emphasis added).

11

When Mr. Usher brings his FTCA case against the OCC, and, if forced, submits a new *Touhy* request to DOJ for the criminal discovery record, there is no reason to believe that DOJ would take a position any different than the "history of stubborn refusals" (*Payne*) that it has been over the past 14 months—not even an affidavit pledging compliance, as the *Payne* court found inadequate.  DOJ here repeatedly deprived Mr. Usher of exculpatory materials that would have been essential to his case, had the OCC not voluntarily and unilaterally dismissed all charges with prejudice.  After having agreed to a protective order that specifically provided that defense counsel could "use Disclosed Documents as part of any motion or application to a court or government agency in the United States" (Protective Order, Am. Compl. Ex. 7 at ¶ 6, ECF No. 8-7), the DOJ Antitrust Division took the rather absurd position that under the terms of the order, at the close of the criminal trial, those materials would suddenly cease to be available to Mr. Usher in any continuing agency action, regardless of the fact that using such materials in an agency action may make such documents "part of a public record" (Aug. 21, 2020 DOJ Letter to Judge Berman, Am. Compl. Ex. 12 at 4).

Even more perplexingly (from today's perspective), DOJ then recommended in the same August 21, 2020 letter that Mr. Usher have the ALJ issue document subpoenas to obtain the records he seeks, and to follow the DOJ's *Touhy* procedures to obtain discovery from DOJ, writing:

> We are not aware that denying Usher's and Ramchandani's current request would work ***any prejudice*** to them in the OCC matter, given that, as they acknowledge, ***they have the ability to subpoena materials*** to support their defense of that action.  With respect to materials created by the Department or other U.S. federal agencies (302s, paralegal notes, audio transcripts, and the like), ***there is an established process*** for requesting such materials in 5 U.S.C. § 301 and 28 C.F.R. § 16.21 *et seq.*, commonly known as the ***Touhy process***.

*Id.* at 5 (emphasis added). With the benefit of hindsight, only a cynic would view DOJ's suggestion to use the *Touhy* process as "justice" or anything other than delay tactics and gamesmanship. But DOJ did not stop there. To further its malfeasance, DOJ went on to say:

> Given that the Department has not received any *Touhy* requests from Usher or Ramchandani for use of government materials in the OCC matter, it is ***presumptuous*** for counsel to now claim that the Department is "***unlikely to make [the documents] available in a timely manner***" or that time would not have been sufficient had they acted earlier.

Aug. 21, 2020 DOJ Letter to Judge Berman, Am. Compl. Ex. 12 at 5 (emphasis added).

The brazenness of such statements cannot be overstated. Essentially, DOJ first assured Judge Berman that he could, without prejudice to Mr. Usher, deny Mr. Usher's request for modification of the protective order because Mr. Usher had the ability to seek the documents he needed either through other means. Those other means, DOJ pointed out, were (1) the use of subpoenas and (2) the *Touhy* process. But when Mr. Usher sought to avail himself of the options DOJ proposed, DOJ refused to acknowledge the authority of the ALJ to issue a subpoena and refused to produce a single document (or even propose a narrowed set of documents it would be willing to produce) in response to Mr. Usher's *Touhy* request.

DOJ's latest invitation that Mr. Usher "of course submit a new request to the Department" falls flat in light of this history. Suggestion of Mootness at 11. It is the same gamesmanship. The documents Mr. Usher would seek in a new request are the same documents. And by the time any order commanding DOJ to produce documents were issued and that decision was adjudicated on appeal, Mr. Usher's FTCA action against the OCC would likely have come to a close. *See* Kevin M. Lewis, Cong. Rsch. Serv., RL45732, *The Federal Tort Claims Act ("FTCA"): A Legal Overview* 34 (Nov. 20, 2019), https://sgp.fas.org/crs/misc/R45732.pdf ("[T]he majority of FTCA . . . claims are resolved on the administrative level and do not go to litigation." (quoting

13

Paul Figley, *Ethical Intersections & The Federal Tort Claims Act: An Approach for Government Attorneys*, 8 U. ST. THOMAS L.J. 347, 359 (2011)); *id.* at 33-35 (explaining procedure and timeline of FTCA litigation, which requires a claimant to submit an administrative claim within two years of the date of his injury and provides that an FTCA claim must be filed in federal court within six months after the administrative claim has been filed). *See also Resolution Trust Corp. v. Walde*, 18 F.3d 943, 944, 946 (D.C. Cir. 1994) (considering direct appeal of (and affirming) district court's orders enforcing administrative subpoenas).

In the interest of conserving both the parties', and the court's resources, and to ensure that Mr. Usher's right to obtain these documents to vindicate his rights is adjudicated, this Court should order that the case is not moot.

## CONCLUSION

For the foregoing reasons, Mr. Usher respectfully requests that this Court DENY the DOJ's suggestion of mootness.

Dated: September 24, 2021  
Washington, DC

Respectfully submitted,

**WHITE & CASE**

/s/ *J. Mark Gidley*  
J. Mark Gidley (Bar No. 417280)  
White & Case LLP  
701 13th Street N.W.  
Washington, DC 20005  
(202) 626-3609  
mgidley@whitecase.com

*Counsel for Richard Usher*

14